IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald M. Hopler and Joan Hopler    :
    :
        v.    :    No. 42 C.D. 2020
    :    Argued: September 15, 2020
North Middleton Township Zoning    :
Hearing Board,    :
        Appellant    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT        FILED: December 3, 2020

The North Middleton Township Zoning Hearing Board (Zoning Board) appeals an order of the Court of Common Pleas of Cumberland County (trial court) that authorizes Donald M. Hopler and Joan Hopler (collectively, the Hoplers) to open a winery on two adjoining lots in an agricultural district. In reversing the Zoning Board's decision to the contrary, the trial court held that the Hoplers' wine production and sale of wine onsite were permissible as uses accessory to the principal agricultural use, *i.e.*, viticulture. On appeal, the Zoning Board contends that the trial court erred because the Hoplers' proposed winery is not permitted in the agricultural zoning district.

**Background**

The Hoplers own two adjacent parcels of land located at 920 and 940 Cranes Gap Road in North Middleton Township. The 10-acre property at 920 Cranes Gap Road is improved with the following: a house where the Hoplers reside; a small shed used as a greenhouse; a barn used for storing tractors; approximately

1,000 grapevines; 210 hop rhizomes; and an apiary. The two-acre property at 940 Cranes Gap Road contains a multi-floor house, a detached garage, two storage buildings, approximately 700 grapevines, and an apiary. The Hoplers raise chickens and guinea fowl on the two adjoining lots.

The Hoplers' property is located in the Rural Resource Zone of the Township, which permits agriculture and "accessory structures and uses customarily incidental" to an agriculture use. NORTH MIDDLETON TOWNSHIP ZONING ORDINANCE OF 2013, Ordinance No. 2013-2 (Zoning Ordinance), §204.14; Reproduced Record at 309a (R.R. __). On October 15, 2018, the Hoplers applied for a zoning permit to create a winery using both parcels. More specifically, the application explained that the Hoplers would produce wine from their harvested grapes; convert the detached garage at 940 Cranes Gap Road into a production and bottling center; and convert the multi-floor dwelling at 940 Cranes Gap Road to a retail space, tasting room and private event space. The Hoplers sought a determination that the proposed winery was a permissible agriculture use and that the other proposed uses were permissible accessory uses. The Hoplers did not apply to consolidate the two lots.

By letter dated October 29, 2018, the Township Zoning Officer denied the zoning permit. The Zoning Officer stated that the Hoplers' proposed winery met the Zoning Ordinance's definition of "agriculture" but the proposed private event space use did not meet the definition of "agriculture" or "retail." Therefore, the private event space did not constitute a permissible accessory use.[1]

---

[1] The Zoning Ordinance contains the following definitions:

> AGRICULTURE – The principal use of land which shall include, but not be limited to, the tilling of the soil, the raising of crops, horticulture, apiculture, floriculture, *viticulture* and gardening. *The production, keeping or maintenance, for sale, lease or personal use, of plants and animals useful to man, including but not limited to*:

The Hoplers appealed the decision to the Zoning Board, which held a public hearing on February 12, 2019. At the hearing, counsel for the Hoplers stated that they sought to consolidate the two parcels, explaining:

> 920 Cranes Gap Road is clearly an agricultural use right now. By combining it with 940 Cranes Gap Road, that property will become part of the agricultural use, and then the existing buildings at 940 Cranes Gap Road will be used for accessory structures.

Notes of Testimony, 2/12/2019, at 20 (N.T. __); R.R. 51a.

To produce wine, the Hoplers use their own grapes and grapes produced elsewhere. Leftover grapes are sold to the Susquehanna Winemakers' Guild. Donald Hopler testified that he produces approximately 150 gallons of wine a year but is permitted by the Pennsylvania Liquor Control Board to produce up to 100,000 gallons. The Hoplers also plan to expand their bee operation. They use the honey

---

… trees and forest products: *fruits of all kinds, including grapes, nuts and berries*; vegetables; *nursery, floral, ornamental and greenhouse products*;…. *This definition also includes the processing and accessory retail sale of goods produced and including one detached dwelling and other necessary structures and equipment to support the agricultural activity.*

\* \* \*

RETAIL – Those businesses whose primary activities involve the display and sales of goods and products to the general public ….

\* \* \*

USE, ACCESSORY – A use customarily incidental and subordinate to the principal use or the principal structure or building and located on the same lot with such principal use or principal structure or building. If no principal use or principal structure or building exists on a lot with a lawful accessory use, then such accessory use shall only be considered a principal use, if the use would otherwise be allowed as a permitted principal use in the zone, and which shall then be subject to provisions in this chapter relating to principal uses. The accessory use cannot [] exceed 75% of the gross area square footage of the principal use on the property.

ZONING ORDINANCE, §204-12 (emphasis added); R.R. 263a, 297a, 303a.

3

they produce in their wine production, and they sell their honey to other wineries and breweries. They also jar the honey for sale.

The Hoplers plan to convert the basement of the house at 940 Cranes Gap Road into a retail space and tasting room for wine, honey, and other agricultural products produced onsite. The top floor of the house would be converted to a private event space. The property's detached garage would be converted to a wine production and bottling center. The Hoplers believe that there is enough room for 15 vehicles to park on a grassy area adjacent to that house that is reinforced with mesh. Mr. Hopler testified that the winery will be open on weekends from 12:00 p.m. to 9:00 p.m. The event space could be rented on any day of the week.

Neighboring property owners testified that they were concerned about a lack of parking; an increase in traffic, crime and noise; as well as a loss of privacy and decline in property values. However, one neighbor testified that he believed the Hoplers' proposal would highly benefit the Carlisle area.

The Hoplers' counsel summarized their position as follows: "What we're asking the [Zoning Board] to decide is that should [we] consolidate these two properties, that the overall use is agriculture." N.T. 120; R.R. 151a.

After closing the evidentiary record, the Zoning Board voted to deny the Hoplers' appeal. On March 26, 2019, the Zoning Board issued a written decision to explain its vote. The Zoning Board reasoned that "[t]he making of wine involves the conversion of grapes, by mechanical and chemical means and introduction of additives, from a fruit into an alcoholic beverage." Zoning Board Decision, 3/26/2019, at 10, Finding of Fact No. 20. It held that making wine "is not an agriculture use, but is a manufacturing use and not a permitted use in the [Rural Resource] Zone." *Id.* at 11-12. It also held that the retail sale of wine is not an

4

agricultural use and, thus, not permitted. Finally, it held that using the property to hold special events or private parties is neither accessory to an agriculture use nor a permitted principal use.

The Zoning Board explained that even if "the proposed uses of the Property (other than the growing of grapes) were accessory uses to an agriculture use, [the Hoplers] would be required to satisfy setback[,] buffer, screening, parking and other requirements and standards stated in Article III of the Zoning Ordinance for the proposed uses, in addition to the applicable requirements for the agriculture use (growing of grapes)." *Id.* at 12. However, the Hoplers did not demonstrate that the proposed principal and accessory uses complied with the lot access, setback, parking, buffer and screening standards. The Zoning Board further explained that the proposed consolidation of the lots was governed by the Township's Subdivision and Land Development Ordinance (SALDO)[2] and beyond its jurisdiction. Therefore, "[c]onsideration by the [Zoning] Board of requirements and standards of the Zoning Ordinance applicable to the Property following lot consolidation, such as lot access, is premature." *Id.* at 11. The Hoplers appealed the Zoning Board's decision to the trial court.

The trial court heard oral argument, and on December 6, 2019, reversed the Zoning Board. It concluded that the Zoning Board abused its discretion in holding that wine production constituted a "manufacturing use." Trial Court Opinion, 12/6/2019, at 4.

Instead, the trial court observed that the definition of "agriculture" in the Zoning Ordinance includes the sale of goods produced. *Id.* at 5. The court

---

[2] NORTH MIDDLETON TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, Ordinance No. 2013-2 (2013), available at http://www.nmiddleton.com/documents (last visited November 23, 2020).

reasoned that the sale of agricultural goods also includes the sale of items harvested and modified for sale. The trial court noted that "'production' entails a 'process,' and fermentation is certainly that. Indeed, it is a process that has occurred for [millennia], with and without additives." *Id.* The trial court explained that the definition of agriculture "is consistent with and subsumes [the Hoplers'] proposed production of wine and accessory retail sale." *Id.* at 5-6. The trial court remanded the matter to the Zoning Board to address the setback and lot access issues as if the lots were consolidated.

The Zoning Board appealed to this Court. In its statement of errors complained of on appeal filed with the trial court, the Zoning Board raised two issues. First, it asserted that a special event space is not a "retail" use that is permitted in the Rural Resource Zone. Second, it asserted that because the two lots were not yet consolidated, the Hoplers were improperly seeking an advisory opinion from the Board on the requirements relating to lot access, setback, screening/buffering and parking requirements.

In its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, PA. R.A.P. 1925(a), the trial court explained that allowing the Hoplers to make wine and customers to taste the wine onsite "is part and parcel of agriculture." Trial Court 1925(a) Opinion, 2/12/2020, at 1.

With respect to the Zoning Board's first issue, the trial court noted that the Zoning Ordinance defines "retail" as "businesses whose primary activities involve the display and sale of goods and products to the general public." *Id.* at 3 (quoting ZONING ORDINANCE, §204.12). The trial court concluded this definition was ambiguous and, thus, must be resolved in favor of the Hoplers. The trial court also concluded that an event space use "is entirely consistent with a 'retail'

6

operation, and that it is accessory to the core agricultural use. We would find it odd if such space were not contemplated as a natural and integral extension to the operation." Trial Court 1925(a) Opinion, 2/12/2020, at 4.

Next, the trial court addressed the Zoning Board's contention that the Hoplers sought an improper advisory opinion. The trial court rejected this argument, stating that the Zoning Ordinance provisions on applications "plainly envision[] the approval (or otherwise) of 'proposed work, development, use or occupancy[.]'" *Id.* at 5. The Zoning Board can therefore take into account future legal developments, such as merger of lots, future physical developments and a new use for a property.

On February 18, 2020, this Court issued the following order:

> [I]t appears that [the Zoning Board] seeks review of the [trial court's December 6, 2019, order] that "remanded [this matter] to the [Zoning Board] to address the remaining unaddressed setback and lot access issues" consistent with the trial court's opinion and order disposing of [the Hoplers'] land use appeal. Because the December 6, 2019[,] order does not appear to be a final order that disposes of all claims and all parties, the parties shall address the appealability of the order in the principal briefs on the merits or other appropriate motion. Pa. R.A.P. 311, 313, 341.

Order, 2/18/2020, at 1. On March 6, 2020, the Hoplers filed an application to quash the Zoning Board's appeal, arguing that the trial court's order is not a final order.

## Appeal

On appeal,[3] the Zoning Board first argues that the trial court erred in holding that the Hoplers' proposed event space is permitted as a principal or accessory agricultural use in the Rural Resource Zone. It next argues that the trial

---

[3] Because the parties presented no additional evidence after the Zoning Board's decision, this Court's review determines whether the Zoning Board committed an abuse of discretion or an error of law. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 n.1 (Pa. Cmwlth. 2005).

7

court erred in permitting the Hoplers to seek an advisory opinion on setback and access requirements because the two lots have not been consolidated.

## Analysis

## Application to Quash

We first address the Hoplers' application to quash the Zoning Board's appeal, based on the contention that the trial court's December 6, 2019, order was not a final order because it remanded the matter to the Zoning Board. The Hoplers also argue that the trial court's order was not an appealable collateral order.

This Court's jurisdiction to hear appeals is limited to final orders, unless otherwise permitted by statute or rule. A final order, under Rule 341(b) of the Pennsylvania Rules of Appellate Procedure, is one that (1) disposes of all claims and of all parties; or (2) is entered as a final order pursuant to subsection (c) of Rule 341. PA. R.A.P. 341(b). Under certain circumstances, an appellate court may entertain an appeal from an interlocutory order taken as a matter of right. PA. R.A.P. 311. Relevant to this matter, Rule 311(f) provides:

> (f) Administrative remand.--An appeal may be taken as of right from: (1) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) *an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed.*

PA. R.A.P. 311(f) (emphasis added).

*Schultheis v. Board of Supervisors of Upper Bern Township, Berks County*, 727 A.2d 145 (Pa. Cmwlth. 1999), is instructive. There, a developer appealed the denial of its preliminary subdivision plan. The trial court found that

8

the deficiencies in his plan were minor and that he should be able to correct them. Accordingly, the trial court remanded the case to allow the developer an opportunity to correct the deficiencies. The zoning board appealed to this Court, asserting that the deficiencies were not minor but substantive. We allowed the appeal for the stated reason that, otherwise, the zoning board's conclusion that the preliminary plan was incomplete would evade appellate review.

Similarly, here, the trial court has remanded this matter for the Zoning Board to determine whether the Hoplers' application met the lot access and setback requirements. Before doing so, the trial court made a determination on the merits of the appeal, *i.e.*, that the proposed uses were permissible in the Rural Resource Zone. It is that determination of the trial court that the Zoning Board challenges on appeal. Stated otherwise, the issue of whether the Hoplers' proposed winery is a permitted use could evade appellate review if the appeal is quashed. Accordingly, we deny the Hoplers' application to quash.[4]

## Merits of Appeal

We turn, then, to the merits of the Zoning Board's appeal. The Zoning Board asserts that the proposed event space is not a permissible principal or accessory use in the Rural Resource Zone. The Zoning Board also asserts that the Hoplers' proposed event space did not meet the Zoning Ordinance's definition of "retail."

Determining whether a proposed use is an accessory use is a question of law based on the underlying facts.[5]  *Philadelphia Suburban Development*

---

[4] We note that the Hoplers effectively withdrew their application to quash during oral argument before this Court on September 15, 2020.

[5] A leading treatise explains the issue of defining an accessory use as follows:

*Corporation v. Scranton Zoning Hearing Board*, 41 A.3d 630, 633 (Pa. Cmwlth. 2012) (quoting *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819, 826 (Pa. Cmwlth. 2003)). "An accessory use must be both subordinate and customarily incidental, *i.e.*, secondary to the permitted main use of a premises and usually found with the principal use." *Philadelphia Suburban*, 41 A.3d at 633. A use is not considered accessory when it will be the principal use of the building. *Id.* at 633-34.

The Hoplers' proposed winery includes a retail space, tasting room and wine production building on the lot at 940 Cranes Gap Road. It also includes event space on the second floor of the house. Mr. Hopler testified that "[i]f somebody wants to rent the second floor out for a spaghetti dinner to support Furry Friends, to create a [fundraiser], they can use it as far as I'm concerned." N.T. 77; R.R. 108a. Otherwise, the second floor will be available "if somebody wants to buy a bottle [of] wine and go sit and watch the sunset[.]" N.T. 91; R.R. 122a. The winery will be open on Friday, Saturday and Sunday, but Mr. Hopler stated that the second floor could also be rented out during the week. N.T. 72; R.R. 103a.

We agree with the trial court that the proposed event space is consistent with, and incidental to, the Hoplers' plan for a winery and the retail sale of their agricultural products. The trial court correctly rejected the Zoning Board's holding

---

Few cases involving definitions in a zoning ordinance are as fact-dependent as a determination of whether one use is accessory to another. The usual ordinance permits a use accessory to a permitted use if it is subordinate or secondary to the principal use and customarily incidental to it. In most instances, the first is a relatively straightforward, factual issue because the use clearly is secondary, although the issues become more difficult at the margins. The second generally involves the question of which particular secondary uses are appropriately associated with the particular principal use in the factual situation involved.

ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE, §4.3 at 31 (2019).

10

that an event space is not a permissible principal or accessory use in the Rural Resource Zone.

Next, the Zoning Board argues that the Hoplers' zoning appeal sought an advisory opinion. The Zoning Officer applied the standards to the uses of the lots as they were configured at the time of the Hoplers' application. It was inappropriate to seek a determination on issues such as lot access and setback requirements for a future consolidated lot.

The Township's SALDO provides, in pertinent part, as follows:

> Nothing contained in this chapter shall relieve the owner or developer from complying with the applicable provisions of Chapter 204, Zoning, of the Code of the Township of North Middleton. It is the expressed intent that this chapter and Chapter 204, Zoning, be coenforceable and together foster the stated planning goals and objectives of the Township. Subdivision and land development plans, in addition to meeting the standards of this chapter, shall conform in all respects to the lot size and land use requirements of Chapter 204, Zoning.

SALDO, §180-8. The SALDO further provides that "[a]ll plans are to be prepared in accordance with the provisions of this chapter, Chapter 204, Zoning, all other plans as adopted and amended, and the applicable professional registration law." SALDO, §180-12. Notably, the applicable provisions here are silent on the timing of zoning approval and approval of a subdivision plan under the SALDO. *See Rickert v. Latimore Township*, 960 A.2d 912, 920 (Pa. Cmwlth. 2008) (explaining that the order of zoning and land development applications depends on the applicable subdivision and land development plan ordinance).

The trial court noted that the Zoning Ordinance "plainly envisions the approval (or otherwise) of 'proposed work, development, use or occupancy[.]'" Trial Court 1925(a) Opinion, 2/12/2020, at 5. It reasoned:

11

The alternative position, that an applicant may not inquire as to the legality of a use until he actually embarks upon that (potentially illegal) use, would appear to be absurd on its face. Relevant case law on the topic of improper, advisory opinions by zoning boards is addressed to situations in which no zoning permit application had yet been rejected, such that there was as of the time of adjudication no alleged wrong requiring a remedy, which is not the case here….

As to the fact that the land in question is presently subdivided, albeit with both tracts being owned by [the Hoplers], it is unclear why that subdivision should be an obstacle to the rendering of a decision as to [the Hoplers'] proposed use of those tracts.

*Id.* at 5-6 (internal citations omitted).

The Zoning Board erred in concluding that the Hoplers sought an advisory opinion. As the trial court stated in its PA. R.A.P. 1925(a) opinion: "The [Zoning Board] may take into account future legal developments, such as merger of properties, as well as future physical developments, such as a new use for a property." Trial Court 1925(a) Opinion, 2/12/2020, at 6. We agree.

## Conclusion

For these reasons, we deny the Hoplers' application to quash and affirm the trial court's decision.

MARY HANNAH LEAVITT, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| Donald M. Hopler and Joan Hopler | : | |
| | : | |
| v. | : | No. 42 C.D. 2020 |
| | : | |
| North Middleton Township Zoning Hearing Board, | : | |
| Appellant | : | |

## **O R D E R**

AND NOW, this 3rd day of December, 2020, the motion to quash filed by Donald M. Hopler and Joan Hopler is DENIED. The order of the Court of Common Pleas of Cumberland County dated December 6, 2019, in the above-captioned matter is AFFIRMED.

MARY HANNAH LEAVITT, President Judge