IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mahoning Township | : | |
| | : | |
| v. | : | No. 68 C.D. 2023 |
| | : | |
| Zoning Hearing Board of | : | Submitted: May 7, 2024 |
| Mahoning Township and | : | |
| The Mahoning Drive-In | : | |
| Theater LLC | : | |
| | : | |
| Appeal of: The Mahoning | : | |
| Drive-In Theater LLC | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE McCULLOUGH                                   FILED: July 12, 2024


      The Mahoning Drive-In Theatre LLC (Mahoning) appeals from the January 3, 2023 order of the Court of Common Pleas of Carbon County (trial court), which found that Mahoning was operating a campground, an unpermitted use in the C-1 (Commercial) District and remanded the matter to the Mahoning Township Zoning Hearing Board (ZHB) to consider Mahoning's request for a variance. Upon review, we affirm.

## I.    Background

      Mahoning operates a drive-in theater at 279 Seneca Road, in Mahoning Township (Township), Carbon County (Property). The drive-in is located in the Township's C-1 District. (Reproduced Record (R.R.) at 4a.) A drive-in theater is not a permitted use in the C-1 District, *id.* at 12a, but the current use predates the Mahoning

Township Zoning Ordinance (Ordinance) and is, therefore, a permitted non-conforming use.

The drive-in theater facility was built in 1947 and began operating as a drive-in theater in 1949. *Id.* at 39a. In 2014, Mahoning implemented an overnight stay program (overnight pass program) to save the drive-in and generate business, and as a safety protocol to avoid late night driving after a film. *Id.* at 40a, 43a-44a. Pursuant to that program, for an extra fee Mahoning permitted patrons of the drive-in theater to stay overnight on the grounds of the drive-in, with restrictions and rules in place. Guests can stay in their cars, or they can pitch tents in a designated area of the Property. *Id.* at 39a-41a. Recreational vehicles (RV) are not permitted, and there are no RV hook-ups. *Id.* at 41a. Open flames, grills, outdoor cooking, and generators are not permitted. *Id.* The drive-in theater employs all-night security staff to keep noise at a "decent level" and to enforce the "no fires" rules. *Id.* at 46a-47a. The drive-in facility is not available to the general public as a place to camp. The overnight pass program is available only to paying patrons of the drive-in theater as part of the exhibition of a film. *Id.* at 41a. There is one RV on the Property, which Mahoning's manager uses as an office and a place for children to sleep overnight during the business season. *Id.* at 7a, 13a, 20a, 39a.

On June 27, 2021, the Mahoning Township Zoning Officer issued a notice of violation of Section 116-40 of the Ordinance for operating a campground in a district where such use is not permitted.[1] *Id.* at 6a, 152a-53a. Mahoning sought a hearing before the ZHB and requested "a favorable interpretation that a campground is not being operated" and that the "use" of either "overnight guest passes" or a "campground" are accessory to a drive-in theater, and in the alternative sought a

---

[1] A "campground" is permitted under Section 116-16 of the Ordinance in an R-1 (Agricultural-Rural) District as a conditional use. (R.R. at 96a.)

variance from Section 116-40U (Accessory buildings and uses customarily incidental to the above uses) of the Ordinance. *Id.* at 108a, 168a-78a. A hearing was held on October 5, 2021. The Zoning Officer testified that the term "campground" is not defined in the Ordinance. When issuing the violation, he used the definition of "campground" taken from the Merriam-Webster Dictionary. *Id.* at 7a. A resident who lives a half mile from the Property testified that there is a lot of garbage, it is very noisy from sun up to sun down, and she cannot keep her windows open at night because of the noise, most often "loud" and "throbbing" "heavy metal" music. *Id.* at 21a-24a. She testified that pop-up tents are there "all the time," "constantly," that it is "rare that you don't see them," and that she observed people "making up their beds in the back of their cars." *Id.* at 30a-31a. She also testified that she has observed individuals who stay over multiple nights. *Id.* at 32a.

Virgil Cardamone, the operator of the drive-in theater, testified that he started the overnight pass program "which allows people to sleep in their vehicle or pitch a tent in the back lot," which is a "designated tent only area." *Id.* at 40a. He also keeps all "car overnighters" in a specific area. *Id.* He explained that a movie patron must purchase a movie ticket in order to stay overnight. *Id.* at 41a. He pointed out that there are other drive-in theaters in neighboring towns, Becky's and Shankweiler's, which offer overnighters or tents to be set up, "for certain events." *Id.* at 48a. However, he did not know anything about the zoning for either of those drive-in theaters or whether overnight camping is permitted under the local zoning laws. *Id.* He also confirmed that there are multi-day events that run one, two, or three days. So, if a person comes Friday and pitches a tent, he or she might not leave until Sunday. *Id.* at 49a. Those who purchased "multiple overnights" can "come and go as they please" during the multiple days and nights they stay at the Property. *Id.* He explained that

3

they do a "sweep of the campground" around noon "so anybody who is not supposed to be there, doesn't have an overnight pass for the next day," must leave. *Id.* at 50a.

The ZHB issued a decision on October 19, 2021, finding that Mahoning was not operating a campground in violation of the Ordinance. *Id.* at 162a-85a. Because the ZHB concluded that Mahoning was not operating a campground, it did not consider Mahoning's alternative request for a variance to operate one, deeming the request moot.

The Township appealed the ZHB's ruling to the trial court. The issue before the trial court was "whether or not a campground is being operated on the [P]roperty and if a campground is accessory to the use of the Drive-In Theater." (Trial ct. op., 1/3/23, at 3.) On January 3, 2023, the trial court sustained the Township's appeal, finding that Mahoning was operating a campground and that the overnight pass program was not permitted as a use accessory to a drive-in theater. The trial court later issued a full opinion on March 23, 2023. The trial court noted that the Ordinance does not define campground. So, it adopted the definition of campground found in 28 Pa. Code § 19.1, which defines "campground" as "a portion of land used for the purpose of providing a space or spaces for trailers or tents, for camping purposes regardless of whether a fee has been charged for the leasing, renting or occupancy of the space." Because "camping purposes" is not defined in the Pennsylvania Code, the trial court turned to the definition of "camping" found in the Code of Federal Regulations (C.F.R.), which defines "camping" as "the erecting of a tent or shelter of natural or synthetic material, preparing a sleeping bag or other bedding material for use, parking of a motor vehicle, motor home or trailer, or mooring of a vessel for the apparent purpose of overnight occupancy." 36 C.F.R. § 1.4. The trial court held that when

4

applying these definitions of campground and camping, it was clear that Mahoning was operating a campground. The trial court explained:

> Mahoning Drive-In is providing a specific area of space on their land for the guests to place tents for "camping purposes." Camping purpose, a.k.a. camping, is without a doubt being carried out at the Drive-In Theater. In the written statement by Mahoning Drive-In they [sic] state that overnight passes are limited to tents and individuals sleeping in their motor vehicles. The tents have to be placed in a designated area and the purpose is for movie goers to occupy the tents overnight.
>
> By way of definition, we find that Mahoning Drive-In is operating a campground and therefore, the appeal is SUSTAINED. This [c]ourt concludes that based upon the facts and circumstances here that the [ZHB] committed an error of law or manifestly abused its discretion when it made the finding that Mahoning Drive-In was NOT operating a campground. ZHB did not adopt a definition of campground, they [sic] did not discuss what a campground was, and only stated on the record that the Zoning Officer provided the ZHB a Webster's definition of campground but nothing in the record reflects that the ZHB applied this definition to the testimony and evidence presented at the hearing.

(Trial ct. op., 1/3/23, at 5) (emphasis in original).

The trial court further ruled that a campground cannot be considered an "accessory use" to a drive-in theater because that use would be neither secondary nor customarily or clearly incidental to a drive-in theater. *Id.* at 7. The trial court sustained the appeal and remanded to the ZHB "to consider the balance of Mahoning['s] initial appeal relative to its variance request." *Id.*

Mahoning timely appealed to this Court on January 30, 2023, raising four issues: (1) whether the trial court erred by disregarding the Ordinance's definition of a "drive-in theater" and instead relying on "inapposite" definitions of "campground" and

5

"camping;" (2) whether the trial court erred by reversing the ZHB's ruling that Mahoning is not operating a campground; (3) whether the trial court erred by ruling the overnight pass program is not a permitted use accessory to the operation of a drive-in theater; and (4) whether the trial court erred in adopting an overly restrictive reading of the Ordinance. (Mahoning's Br. at 4.)

On June 5, 2023, this Court directed the parties to address the appealability of the January 3, 2023 order in light of this Court's decision in *Kramer v. Zoning Hearing Board of Upper Saucon Township*, 641 A.2d 685 (Pa. Cmwlth. 1994) ("[A] court order remanding a matter to an administrative agency for additional hearings is generally interlocutory and not a final order from which an appeal may be taken.").

## II.   Analysis

### Appealability of the January 3, 2023 Order

We will first address the appealability of the January 3, 2023 order from which this appeal was taken.

This Court's jurisdiction to hear appeals is limited to final orders, unless otherwise permitted by statute or rule. A final order, under Rule 341(b) of the Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) is one that (1) disposes of all claims and of all parties; or (2) is entered as a final order pursuant to subsection (3) of Rule 341. Pa.R.A.P. 341(b). Under certain circumstances, an appellate court may entertain an appeal from an interlocutory order taken as a matter of right. Pa.R.A.P. 311. Relevant to this matter, Rule 311(f) provides:

> (f) **Administrative remand**.--An appeal may be taken as of right from: (1) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) **an order of a**

6

> **common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed**.

Pa.R.A.P. 311(f) (emphasis added).

*Schultheis v. Board of Supervisors of Upper Bern Township, Berks County*, 727 A.2d 145 (Pa. Cmwlth. 1999), is instructive. There, a developer appealed the denial of its preliminary subdivision plan. The trial court found that the deficiencies in his plan were minor and that he should be able to correct them. Accordingly, the trial court remanded the case to allow the developer an opportunity to correct them. The zoning board appealed to this Court, asserting that the deficiencies were not minor but substantive. We allowed the appeal for the stated reason that, otherwise, the zoning board's conclusion that the preliminary plan was incomplete would evade appellate review. *Id.* at 148.

Similarly, here, the trial court has remanded this matter for the ZHB to consider and rule on Mahoning's application for a variance. Before doing so, the trial court made a determination on the merits of the appeal, *i.e.*, that Mahoning is operating a campground in violation of Section 116-40 of the Ordinance and that the overnight pass program could not be permitted as a use accessory to a drive-in theater. It is that determination of the trial court that Mahoning challenges on appeal. That decision will carry forward to Mahoning's request for a variance, which will necessarily be based on the assumption that the use is not permitted. Any potentially appealable issues that resulted from the ZHB's actions on remand would therefore relate solely to the grant or denial of the variance, not whether Mahoning is illegally operating a campground. Just as in *Schultheis*, whether Mahoning is illegally operating a campground and whether the overnight pass program could be considered a use accessory to a drive-in theater would consequently evade appellate review if the appeal is quashed.

7

Accordingly, we find the appeal is not interlocutory and the appeal is properly before us.

**Merits of Appeal**[2]

**1.**

Mahoning first argues that the trial court erred by concluding that its overnight pass program constituted camping. It asserts that the trial court arrived at this conclusion by erroneously "bypassing" the definition of an outdoor drive-in theater in the Ordinance and relying on inapposite definitions of "campground" and "camping" in state and federal regulations. It contends that the trial court should have applied the Ordinance's definition of drive-in theater in Section 116-8 of the Ordinance, which provides:

> Drive-In Theater. An open lot or part thereof, with its appurtenant facilities, **devoted primarily** to the showing of moving pictures or theatrical productions, on a paid-admission basis, to patrons seated in automobiles or on outdoor seats, not to include an adult mini motion-picture theater.

(Ordinance, § 116-8) (emphasis added).

Mahoning argues that the Ordinance's definition of a drive-in theater is critical because it expressly leaves room for ancillary activities by describing a drive-in theater's business as "devoted primarily" to the showing of moving pictures. It

---

[2] Where, as here, the trial court takes no additional evidence regarding a land use appeal, our review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Marshall v. East Bradford Township Board of Supervisors*, 250 A.3d 481, 487 (Pa. Cmwlth. 2021). "An abuse of discretion occurs when [a local agency's factual] findings are not supported by substantial evidence in the record." *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 832, 838 (Pa. Cmwlth. 2008). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

maintains that by using the phrase "devoted primarily," the Ordinance contemplates that there will be associated services beyond the mere exhibition of movies and theatrical productions, such as offering food and overnight stays. Mahoning argues that the trial court should have read the phrase "devoted primarily" and the "latitude expressly built into the Ordinance" to conclude that drive-in theaters include its overnight pass program. (Mahoning's Br. at 20.) It also argues that, in arriving at the conclusion that (1) the overnight pass program constitutes camping and (2) Mahoning is operating a campground, the trial court erred by applying the definition of "campground" contained in 28 Pa. Code § 19.1, and the definition of "camping" contained in 36 C.F.R. § 1.4.

The Ordinance is silent as to the meaning of campground. When interpreting zoning ordinances, words not defined in the ordinance are to be construed in accordance with their plain and ordinary meaning. *Upper Salford Township v. Collins*, 669 A.2d 335, 337 (Pa. 1995). To define an undefined term, courts may consult definitions found in statutes, regulations or the dictionary for assistance. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 590 A.2d 65 (Pa. Cmwlth. 1991). A given phrase must be interpreted in context and read together with the entire ordinance. *Borough of Pleasant Hills v. Zoning Board of Adjustment of the Borough of Pleasant Hills*, 669 A.2d 428 (Pa. Cmwlth. 1995).

The definitions of "campground" and "camping" contained at 28 Pa. Code § 19.1 and 36 C.F.R. § 1.4, respectively, are the popular, plain, everyday sense of those words. They are entirely consistent with the definitions of "camp" and "campground" contained in the Merriam-Webster Dictionary, which incidentally the trial court referenced in its March 23, 2023 opinion,[3] and which defines "campground" as "the

---

[3] *See* Trial Ct. op. at 7.

area or place (such as a field or grove) used for a camp or camping."[4]  "Camp" is defined as "a place usually away from urban areas where tents or simple buildings are erected for shelter or for temporary residence."[5]  The trial court did not suggest that the regulatory scheme contained in either the Pennsylvania Code or the C.F.R. applied to the campground being operated by Mahoning.  It merely used the regulations for the purpose of assisting it in defining the term "campground" and applied the common and ordinary meaning of the term, which it was required to do.  *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006).  Accordingly, we discern no error in the trial court's reliance, in part, on the definitions in the regulations to define "campground."  *See Nether Providence Township v. R.L. Fatscher Associates, Inc.*, 674 A.2d 749 (Pa. Cmwlth. 1996) (trial court did not abuse its discretion in using the Basic Building Code as guidance to define the term "floor" and "story" when those terms were not defined in the ordinance).

We must also disagree with Mahoning's contention that the phrase "devoted primarily" in the definition of "drive-in theater" required the trial court to conclude that **operating a campground** fell within the definition of drive-in theater.  Focusing on the word "primarily," Mahoning argues that phrase "devoted primarily" means that the drafters intended to include other principal uses within the definition of drive-in theater.  This argument defies logic and the common usage of the word "primarily."  While not specifically defined in the Ordinance, Merriam Webster Dictionary defines "primarily" as "for the most part: chiefly" and "in the first place:

---

[4]Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/campground (Last visited July 11, 2024).
[5]Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/camp (Last visited July 11, 2024).

10

originally."[6]   To adopt Mahoning's interpretation would dramatically expand the definition of a drive-in theater beyond what the drafters of the Ordinance intended by broadening or expanding the definition of drive-in theater from a place where movies are shown to patrons seated in automobiles or outdoor seats to other principal uses, including the operation of a campground.  We reject the suggestion that the drafters of the Ordinance intended that one principal use (*i.e.*, a campground) would be incorporated into another principal use (*i.e.*, an outdoor drive-in theater) in the backdoor method suggested by Mahoning.  The primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See* 1 Pa. C.S. § 1921; *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 509 (Pa. Cmwlth. 2014).  It is abundantly clear to this Court that the definition of drive-in theater was not meant to encompass a campground.

## 2.

Next, Mahoning argues that the trial court erred by reversing the ZHB's ruling that Mahoning is not operating a campground.  We disagree.

As the trial court noted, the ZHB found that Mahoning was not operating a campground, but it did not adopt any definition of campground to support its decision. It did not offer any explanation as to why it concluded that Mahoning was not operating a campground.  It did not discuss what a campground was, and only mentioned on the record that the Zoning Officer provided a Merriam-Webster definition of campground, but nothing in the record reflects that the ZHB applied this definition to the testimony and evidence presented at the hearing.

We are unable to conclude that the trial court erred in finding the ZHB abused its discretion in finding that Mahoning was not operating a campground.  We

---

[6] Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/primarily (last visited July 11, 2024).

11

agree with the trial court that when applying the above definitions of campground and camping to the evidence in the record, it is clear that Mahoning is operating a campground and masking it under the guise of "overnight guest passes." The undisputed evidence before the ZHB showed that movie patrons are permitted to pitch tents or sleep in their cars for shelter in designated areas, on a temporary basis, sometimes for a weekend. The fact that patrons are permitted to do this in connection with watching a drive-in movie does not detract from the fact that they are camping on the Property, even if it is just for a few days and even if it is only in tents and cars.

**3.**

In its next issue, Mahoning argues that the trial court erred by ruling the overnight pass program is not a permitted use accessory to the operation of a drive-in theater. It argues that the trial court erred by rejecting uncontradicted evidence in the record that "two other drive-in businesses also have overnight stay programs to a degree." (Mahoning's Br. at 26.) Mahoning's argument is not persuasive. As we have just concluded, the trial court did not err when it concluded that the overnight pass program constitutes camping, so the salient issue is whether a campground is a permitted use accessory to the operation of a drive-in theater.

The Ordinance defines "accessory use" as "a use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building." (Ordinance, § 116.) In order for overnight camping to be allowed at a drive-in theater, Mahoning was required to prove that a campground is an accessory use to a drive-in theater and that camping is customarily incidental to the operation of a drive-in theater. Whether a use is customarily incidental to a principal use requires an intensive fact-based analysis and an evaluation based upon a reasonable person standard. *Hess v. Warwick Township Zoning Hearing Board*, 977 A.2d 1216

12

(Pa. Cmwlth. 2009). The term "customarily incidental" is understood as invoking an objective reasonable person standard. *Id.* at 1124. Under this standard, courts may look not only at how frequently the proposed accessory use is found in association with the primary use (if such evidence is available, it certainly is relevant) but also at the applicant's particular circumstances, the zoning ordinance, and the indications therein as to the governing body's intent regarding the intensity of land use appropriate to the particular district. *Id.* Courts also look at the surrounding land conditions and any other relevant information, including general experience and common understanding, to reach a legal conclusion as to whether a reasonable person could consider the use in question to be customarily incidental. *Id.* This approach respects the need for an understandable legal standard and the flexibility that is a necessary component of the analysis. *Id.*

The trial court did not err when it ruled that a campground (or camping) is not an accessory use to a drive-in theater because that use is not customarily found with or clearly incidental to a drive-in theater. Mahoning failed to produce evidence that suggests a campground is customarily incidental to the use of a property for a drive-in theater. At best, Mahoning offered evidence that it has been operating the "overnight guest passes" for seven years but did not offer any evidence that this is a common accessory use among other drive-in theaters. It attempted to meet that burden by offering evidence that two drive-in theaters in other jurisdictions offer occasional overnight stays for certain events. However, it does not cite any legal authority or evidence in the record regarding these establishments, the zoning ordinances for the townships in which they are located, or any evidence regarding the actual primary or accessory uses. Mr. Cardamone also admitted that Becky's and Shankweiler's are not operating a campground in the manner which Mahoning is. He testified, "[t]hey don't

13

have the model that we do which offers it every single night they are open, but they do have instances when they do allow overnighters or tents to be set up." (R.R. at 48a.) Thus, Mahoning failed to meet its burden of proving that a campground is customarily incidental to a drive-in theater.[7]

Accordingly, the trial court correctly determined that a campground is not an accessory use to a drive-in theater and did not abuse its discretion or commit an error of law when making this determination.

**4.**

Lastly, Mahoning argues that the trial court erred in adopting an overly restrictive reading of the Ordinance. It contends that the trial court departed from the well-settled principles that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference and that doubts or ambiguities are to be resolved in favor of the landowner and the least restrictive use of the land. *Balady Farms, LLC v. Paradise Township Zoning Hearing Board*, 148 A.3d 496 (Pa. Cmwlth. 2016); *Risker v. Smith Township Zoning Hearing Board*, 886 A.2d 727, 731 (Pa. Cmwlth. 2005). We find this issue too is without merit.

While it is true that zoning ordinances are to be interpreted to allow the broadest possible land use, it is also true that the words must be construed by their plain and ordinary meanings. *See Markwest Liberty Midstream and Resources, LLC v. Cecil Township Zoning Hearing Board*, 102 A.3d 549 (Pa. Cmwlth. 2014). "The requirement that Courts strictly construe a zoning ordinance does not mean that they must ignore uses that clearly fall outside those that are permitted by the ordinance." *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886 (Pa. 2019).

---

[7] With respect to proving that the use of the Property as a campground was subordinate to the use as an outdoor drive-in theater, Mahoning produced no evidence at all.

There is no question that the Ordinance does not allow any type of camping in the C-1 Commercial District. It is equally clear, as explained above, that the definition of drive-in theater does not include the operation of a campground, and that a campground is not an accessory use to a drive-in theater.

For the above reasons, the decision of the trial court is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mahoning Township                           :
                                            :
            v.                              :  No. 68 C.D. 2023
                                            :
Zoning Hearing Board of                     :  Submitted: May 7, 2024
Mahoning Township and                       :
The Mahoning Drive-In                       :
Theater LLC                                 :
                                            :
Appeal of: The Mahoning                     :
Drive-In Theater LLC                        :

# *ORDER*

AND NOW, this 12th, day of July, 2024, January 3, 2023 order of the Court of Common Pleas of Carbon County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge